1  DAVID L. ANDERSON (CABN 149604)
   United States Attorney
2
   HALLIE HOFFMAN (CABN 210020)
3  Chief, Criminal Division

4  ANDREW F. DAWSON (CABN 264421)
   GREGG W. LOWDER (CABN 107864)
5  Assistant United States Attorneys

6        450 Golden Gate Avenue, Box 36055
         San Francisco, California 94102-3495
7        Telephone: (415) 436-7200
         FAX: (415) 436-7234
8        Email:  Gregg.Lowder@usdoj.gov

9  Attorneys for United States of America

10              UNITED STATES DISTRICT COURT

11             NORTHERN DISTRICT OF CALIFORNIA

12                 SAN FRANCISCO DIVISION

13  UNITED STATES OF AMERICA,          )   CASE NO. CR 18-0533 RS
                                       )
14         Plaintiff,                  )   **RECORDED NOTICE OF PENDENCY OF**
                                       )   **ACTION (LIS PENDENS) AS TO REAL**
15     v.                              )   **PROPERTY AND IMPROVEMENTS**
                                       )   **LOCATED AT 10430 WILSHIRE BLVD., APT**
16  EDVIN OVASAPYAN,                   )   **#1901, LOS ANGELES, CALIFORNIA 90024**
    HAKOB KOJOYAN,                     )   **(APN 4326-036-097)**
17  LORIK PAPAYAN, and                 )
    STEPHEN SILVERMAN,                 )
18                                     )
           Defendants.                 )
19  _____)

20
         The United States hereby submits the attached Recorded Notice of Pendency of Action
21
    (Lis Pendens) as to Real Property and Improvements Located at 10430 Wilshire Boulevard, Apt #1901,
22
    Los Angeles, California 90024 (APN 4326-036-097).
23
                                           Respectfully submitted,
24
                                           DAVID L. ANDERSON
25                                         United States Attorney

26  Dated: 9 | 16 | 2019

27                                         GREGG W. LOWDER
                                           Assistant United States Attorney
28

RECORDED NOTICE OF LIS PENDENS – 10430 WILSHIRE BLVD
CR 18-0533 RS

1

**CERTIFICATE OF SERVICE**

2      The undersigned hereby certifies that she is an employee in the Office of the United States

3  Attorney for the Northern District of California and is a person of such age and discretion to be

4  competent to serve papers.  The undersigned further certifies that she caused a copy of

5      • Recorded Notice of Pendency of Action (Lis Pendens) as to Real Property and
         Improvements located at 10430 Wilshire Blvd., Apt. #1901, Los Angeles, CA 90024
6

7  to be served this date via United States first class mail delivery upon the person(s) below at the place(s)

8  and address(es) which is the last known address(es):

| | |
|---|---|
| Le Chantel, LLC<br>620 W. Hollywood Way, #302<br>Burbank, CA 91505 | Rediger Investment Corporation<br>500 E. Olive Avenue, Suite 840<br>Burbank, CA 91501 |
| Le Chantel, LLC<br>10430 Wilshire Blvd., Apt 1901<br>Los Angeles, California 90024 | Nora Petrosyan<br>13636 Ventura Blvd., Unit 663<br>Sherman Oaks, CA 91423 |
| Le Chantel, LLC<br>13636 Ventura Blvd., Unit 663<br>Sherman Oaks, CA 91423 | |

16

17      I declare under penalty of perjury under the laws of the United States of America that the

18  foregoing is true and correct to the best of my knowledge.

19      Executed this  16th day of September, 2019 at San Francisco, California

20                                         *Carolyn Jusay*
                                          CAROLYN JUSAY
21                                        FSA Paralegal
                                          Asset Forfeiture Unit
22

23

24

25

26

27

28



**This page is part of your document - DO NOT DISCARD**



## 20190931828



**Pages: 0023**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County, California**

**09/10/19 AT 04:13PM**

| | |
|---|---|
| FEES: | 83.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 83.00 |



**L E A D S H E E T**



201909100260014

**00017127369**



010111583

**SEQ:**
**01**

SECURE - Daily - Time Sensitive



**THIS FORM IS NOT TO BE DUPLICATED**

USA v. Edvin Ovasapyan

E535563

FOR REFERENCE ONLY: 20190931828

**RECORDING REQUESTED BY:**

UNITED STATES ATTORNEYS OFFICE

**WHEN RECORDED PLEASE MAIL TO:**
AUSA GREGG W. LOWDER
UNITED STATES ATTORNEYS OFFICE
450 GOLDEN GATE AVENUE, BOX 36055
SAN FRANCISCO, CA 94102
ATTN: ASSET FORFEITURE UNIT

(DOCUMENT WILL ONLY BE RETURNED TO NAME & ADDRESS ABOVE)

(SPACE ABOVE FOR RECORDER'S USE)

NOTICE OF LIS PENDENS AS TO REAL PROPERTY AND IMPROVEMENTS LOCATED AT
10430 WILSHIRE BOULEVARD, APT 1901, LOS ANGELES, CALIFORNIA 90024

**(DOCUMENT TITLE)**

SEPARATE PAGE, PURSUANT TO CA. GOV'T. CODE 27361.6

1   DAVID L. ANDERSON (CABN 149604)
    United States Attorney
2
    HALLIE HOFFMAN (CABN 210020)
3   Chief, Criminal Division

4   ANDREW F. DAWSON (CABN 264421)
    GREGG W. LOWDER (CABN 107864)
5   Assistant United States Attorneys

6       450 Golden Gate Avenue, Box 36055
        San Francisco, California 94102-3495
7       Telephone: (415) 436-7044
        FAX: (415) 436-6748
8       Gregg.Lowder@usdoj.gov
        Andrew.Dawson@usdoj.gov
9
    Attorneys for United States of America
10
                    UNITED STATES DISTRICT COURT
11
                   NORTHERN DISTRICT OF CALIFORNIA
12
                      SAN FRANCISCO DIVISION
13

14  UNITED STATES OF AMERICA,              )   No.    CR 18-0533 RS
                                           )
15          Plaintiff,                     )   **NOTICE OF PENDENCY OF ACTION (LIS**
                                           )   **PENDENS) AS TO REAL PROPERTY AND**
16      v.                                 )   **IMPROVEMENTS LOCATED AT 10430**
                                           )   **WILSHIRE BLVD. APT #1901, LOS ANGELES,**
17  EDVIN OVASAPYAN,                       )   **CALIFORNIA 90024  (APN 4326-036-097)**
    HAKOB KOJOYAN,                         )
18  LORIK PAPYAN, and                      )
    STEPHEN SILVERMAN,                     )
19                                         )
                                           )
20          Defendants.                    )
    _____)
21

22          NOTICE IS HEREBY GIVEN that a criminal action has been commenced in the above-entitled

23  Court pursuant to a Superseding Indictment filed under the above case number on September 5, 2019

24  (attached hereto as Exhibit A) and a Fourth Bill of Particulars for Forfeiture of Property has been filed

25  by the United States of America on September 10, 2019 (attached hereto as Exhibit B) to secure the

26  judicial forfeiture to the United States of the real property and improvements located at 10430 Wilshire

27  Blvd., Apt #1901, Los Angeles, California 90024 (Assessors Parcel Number 4326-036-097), which is

28  further described in Exhibit C (also attached hereto).

NOTICE OF LIS PENDENS – 10430 WILSHIRE BLVD
CR 18-0533 RS                            1

1    The United States alleges that the said real property is subject to forfeiture pursuant to 18 U.S.C.

2  § 981, 18 U.S.C. § 982 and 28 U.S.C. § 2461(c).

3    The owner of record to the said real property is Le Chantel LLC.

4  DATED:    9/6/2019                          Respectfully submitted,

5                                              DAVID L. ANDERSON
                                               United States Attorney
6

7                                              GREGG W. LOWDER
                                               Assistant United States Attorney
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee in the Office of the United States

Attorney for the Northern District of California and is a person of such age and discretion to be

competent to serve papers.  The undersigned further certifies that she caused a copy of

- Notice of Pendency of Action (Lis Pendens) as to Real Property and Improvements located at 10430 Wilshire Blvd., Apt 1901, Los Angeles, California 90024

to be served this date via United States certified mail delivery and first class mail delivery upon the

person(s) below at the place(s) and address(es) which is/are the last known address(es):

| | |
|---|---|
| Le Chantel, LLC<br>620 W. Hollywood Way, #302<br>Burbank, CA 91505 | Rediger Investment Corporation<br>500 E. Olive Avenue, Suite 840<br>Burbank, CA 91501 |
| Le Chantel, LLC<br>10430 Wilshire Blvd., Apt 1901<br>Los Angeles, California 90024 | Nora Petrosyan<br>13636 Ventura Blvd., Unit 663<br>Sherman Oaks, CA 91423 |
| Le Chantel, LLC<br>13636 Ventura Blvd., Unit 663<br>Sherman Oaks, CA 91423 | |

I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct to the best of my knowledge.

Executed this 10th day of September, 2019, at San Francisco, California

Carolyn Jusay

CAROLYN JUSAY
FSA Paralegal
Asset Forfeiture Unit

# Exhibit A

1  DAVID L. ANDERSON (CABN 149604)
   United States Attorney
2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                         NORTHERN DISTRICT OF CALIFORNIA

10                             SAN FRANCISCO DIVISION

11  UNITED STATES OF AMERICA,            )   CASE NO. CR 18-533 RS
                                         )
12          Plaintiff,                   )
                                         )
13      v.                               )   VIOLATIONS: 18 U.S.C. § 1349 – Conspiracy to
                                         )   Commit Wire Fraud; 18 U.S.C. § 1956(h) –
14  EDVIN OVASAPYAN, HAKOB KOJOYAN,      )   Conspiracy to Commit Laundering of Monetary
    LORIK PAPYAN, and STEPHEN            )   Instruments; 18 U.S.C. § 371 – Conspiracy to Engage
15  SILVERMAN                            )   in the Unlawful Wholesale Distribution of Drugs; 18
                                         )   U.S.C. § 2 – Aiding and Abetting; 18 U.S.C. §§ 981,
16          Defendants.                  )   982, 21 U.S.C. § 853 & 28 U.S.C. § 2461(c) –
                                         )   Criminal Forfeiture
17                                       )
                                         )   SAN FRANCISCO VENUE
18

19                          S U P E R S E D I N G   I N D I C T M E N T

20  The Grand Jury charges:

21                                  Introductory Allegations

22      At all times relevant to this Indictment:

23          Overview of the Regulation of the Distribution of Prescription Drugs

24      1.      The Food and Drug Administration ("FDA") was the federal agency of the United States

25  responsible for administering federal statutes and regulations aimed at protecting the health and safety of

26  United States citizens and residents by ensuring that, among other things, drugs were safe and effective

27  for their intended uses and that the labeling of such drugs bore true, complete, and accurate information

28  before they may be offered and sold in the United States.

SUPERSEDING INDICTMENT                         1

2.      The FDA enforced the Federal Food, Drug and Cosmetic Act ("FDCA"), as amended by the Drug Supply Chain and Security Act ("DSCSA"), which, among other things, was designed to ensure that drugs sold for human use were safe and effective for their intended uses.

3.      The FDCA defined a "drug" as: (A) articles recognized in the official United States Pharmacopoeia, official Homeopathic Pharmacopoeia of the United States, or official National Formulary, or any supplement to any of them; (B) articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animals; (C) articles (other than food) intended to affect the structure or any function of the body of man or other animals; and (D) articles intended for use as a component of any articles specified in clause (A), (B), or (C).

4.      A "prescription drug" was any drug "intended for use by man" which, "(A) because of its toxicity or other potentiality for harmful effects, or the method of its use, or the collateral measures necessary to its use, is not safe for use except under the supervision of a practitioner licensed by law to administer such drugs," or any drug which "(B) is limited by an approved [new drug] application . . . to use under the professional supervision of a practitioner licensed by law to administer such drug." 21 U.S.C. §353(b)(1).

5.      On November 27, 2013, the DSCSA was enacted to better protect the integrity of the nation's drug distribution system.  One of the intended results of the DSCSA was to prevent the practice known as prescription drug diversion.   Under the DSCSA:

    a)      "Wholesale Distribution" meant distribution of a prescription drug to or receipt of a prescription drug by a person other than a consumer or patient, but does not include the lawful dispensing of a prescription drug pursuant to a prescription according to 21 U.S.C. §353(b)(1).

    b)      A "wholesale distributor" of prescription drugs meant a person (other than the manufacturer, a manufacturer's co- licensed partner, a third party logistics provider, or repackager) engaged in wholesale distribution.

    c)      "Authorized" in the case of a wholesale distributor meant having a valid license under State law or 21 U.S.C. § 360eee-2, in accordance with 21 U.S.C. §360eee-1(a)(6).

    d)      "Licensed," in the case of a wholesale distributor, meant having a valid license in

accordance under 21 U.S.C. §353(e) or State law.

    e)    "Transaction history" meant a statement in paper or electronic form that includes the transaction information for each prior transaction going back to the manufacturer of the drug product.

    f)    "Transaction information" included, among other things, the strength and dosage form of the drug product, the number of containers, the lot number of the drug product, and the business name and address of the persons from whom and to whom ownership is being transferred.

    g)    "Transaction statement" meant a statement in paper or electronic form that the entity transferring ownership of a drug product is in compliance with certain provisions of the DSCSA.

6.    Effective January 1, 2015, the FDCA, as amended by the DSCSA, imposed requirements on wholesale distributors of most prescription drugs, including certain product tracing requirements. Specifically:

    a)    A wholesale distributor was prohibited from accepting ownership of a product unless the previous owner prior to, or at the time of, the transaction provided the transaction history, transaction information, and a transaction statement for the product.

    b)    The trading partners of a wholesale distributor may only be authorized trading partners.

7.    If a wholesale distributor purchased a product directly from the manufacturer, the exclusive distributor of the manufacturer, or a repackager that purchased directly from the manufacturer, then prior to, or at the time of, each transaction in which the wholesale distributor transferred ownership of a product, the wholesale distributor was required to provide to the subsequent purchaser—

    a)    a transaction statement, which was required to state that such wholesale distributor, or a member of the affiliate of such wholesale distributor, purchased the product directly from the manufacturer, exclusive distributor of the manufacturer, or repackager that purchased the product directly from the manufacturer; and

    b)    the transaction history and transaction information.

8.      Wholesale distributors of prescription drugs who did not purchase a prescription drug directly from the manufacturer, the exclusive distributor of the manufacturer, or a repackager directly from the manufacturer must have, prior to or at the time of each transaction, provided to the subsequent purchaser a transaction history, transaction information, and transaction statement.  Wholesale distributors were required to capture the transaction information (including lot level information), transaction history, and transaction statements for each transaction described above, and maintain that information, history and statement for not less than six years after the date of the transaction.

### The Defendants and Related Entities

9.      Defendant Edvin OVASAPYAN was the owner and operator of Mainspring Distribution, a Pennsylvania limited liability company.  OVASAPYAN resided in the State of California.

10.     Mainspring Distribution ("Mainspring") was a Pennsylvania corporate entity that has been licensed by the Commonwealth of Pennsylvania as a wholesale pharmaceutical distributor.

11.     Defendant Hakob KOJOYAN resided in the State of California.

12.     Defendant Lorik PAPYAN resided in the State of California.

13.     Defendant Stephen SILVERMAN resided in the State of California.  SILVERMAN was an attorney licensed to practice law in the State of California.

### The Conspiracy and Scheme to Defraud

14.     Beginning at a date unknown to the grand jury, but no later than on or about February 9, 2017, and continuing through a date unknown to the grand jury, but to at least on or about March 25, 2019, OVASAPYAN, KOJOYAN, PAPYAN, and SILVERMAN knowingly devised, intended to devise, and carried out a conspiracy and scheme and artifice to defraud as to a material matter, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts and omissions of material facts with a duty to disclose.

As part of the conspiracy and scheme to defraud:

15.     OVASAPYAN, through his control of Mainspring, sold or arranged to be sold large quantities of prescription drugs to retail pharmacies and wholesalers across the United States. Mainspring specialized in the distribution of various prescription drugs used to treat the Human Immunodeficiency Virus ("HIV").  OVASAPYAN, KOJOYAN, PAPYAN, and others known and

1  unknown to the Grand Jury generated false and misleading documentation claiming that the HIV drugs

2  sold by Mainspring had been acquired in compliance with federal law from authorized trading partners

3  who were licensed, legitimate suppliers.  In sum, OVASAPYAN, KOJOYAN, PAPYAN, and their

4  coconspirators identified a licensed wholesaler in California (hereinafter, the LICENSED SUPPLIER)

5  and then created paperwork falsely representing that Mainspring's supply of prescription drugs had been

6  acquired from the LICENSED SUPPLIER.  In reality, Mainspring had never acquired any prescription

7  drugs from the LICENSED SUPPLIER, and the drugs sold under that name had in fact been acquired

8  from unlicensed sources on the black market.

9      16.   In particular, when Mainspring sold prescription drugs to its customers, it provided those

10  customers with documentation purporting to be the required transaction information, transaction

11  statements, and transaction histories (collectively, "Transaction Documentation").  Provision of such

12  documentation was required by the DSCSA.  Since on or about February 2017, and continuing through

13  approximately November 2018, the vast majority of the Transaction Documentation for Mainspring's

14  sales, prepared in connection with certain transactions, represented that a particular supplier (hereinafter,

15  "SUPPLIER ONE"), was the source from which Mainspring had acquired the drug.  That Transaction

16  Documentation was materially false and misleading.

17      17.   The listed name for SUPPLIER ONE on the Transaction Documentation prepared in

18  connection with certain transactions was misleadingly similar to the name of the LICENSED

19  SUPPLIER, and it created the false impression that the prescription drugs in question had, in fact, been

20  supplied by the LICENSED SUPPLIER.  The Transaction Documentation buttressed this false

21  impression by also listing the LICENSED SUPPLIER's business address in the State of California.

22  Customers reviewing the Transaction Documentation purporting to identify the source of the

23  prescription drugs would therefore see a name confusingly similar to the LICENSED SUPPLIER, in

24  addition to the business address for the LICENSED SUPPLIER.  In reality, the vast majority of the

25  prescription drugs sold by Mainspring were acquired from other sources that were never disclosed to

26  customers or reflected in the Transaction Documentation.  In most instances, these prescription drugs

27  were unlawfully acquired from unlicensed individuals operating in the State of California.

28      18.   OVASAPYAN, KOJOYAN, and PAPYAN communicated frequently during the course

1  of the conspiracy, and KOJOYAN and PAPYAN knowingly participated in the scheme to mislead

2  customers into believing that Mainspring's supply of prescription drugs was legitimate.  KOJOYAN and

3  OVASAPYAN monitored the licensure status for the LICENSED SUPPLIER, and in the event the

4  license for the LICENSED SUPPLIER became inactive, OVASAPYAN and KOJOYAN would cease

5  sales activity until the license was reactivated.

6       19.    As a further part of the conspiracy and the scheme to defraud, OVASAPYAN,

7  KOJOYAN, and others established and caused to be established shell companies with names deceptively

8  similar to the LICENSED SUPPLIER.  OVASAPYAN and KOJOYAN then established and caused to

9  be established bank accounts held in those deceptively similar corporate names.  In order to conceal the

10  fraud, OVASAPYAN and KOJOYAN arranged for Mainspring to transfer funds to these deceptively

11  named accounts in order to create banking records superficially consistent with financial transfers to a

12  legitimate, LICENSED SUPPLIER.  However, Mainspring never transferred any funds to any bank

13  account controlled by the LICENSED SUPPLIER, and it otherwise never did any business with the

14  LICENSED SUPPLIER.  In reality, the funds transferred from Mainspring to the accounts established

15  by KOJOYAN and others were often liquidated and returned as proceeds to the coconspirators, or else

16  transferred to other bank accounts.  Only a very small portion of the funds acquired by Mainspring from

17  its customers was ever sent to licensed prescription drug wholesalers.  Over the course of the scheme,

18  Mainspring was paid more than $70,000,000 by its customers.

19       20.    SILVERMAN was member of the scheme during this same time period, and he joined

20  the conspiracy knowing its illicit nature and intending to help further the conspiracy.  SILVERMAN and

21  OVASPAYAN communicated frequently via email and other means, and SILVERMAN agreed to and

22  did ghostwrite communications in furtherance of the scheme at OVASAPYAN's request.

23  SILVERMAN assisted in financing the scheme in its early stages, obtained necessary licenses to further

24  the scheme, established or caused to be established corporate entities and associated bank accounts, and

25  received a portion of the profits once the scheme was operational.

26       21.    As a further part of the conspiracy and the scheme to defraud, PAPYAN and

27  SILVERMAN sought to continue the scheme to defraud after Mainspring ceased operations in or about

28  November 2018.  PAPYAN, SILVERMAN, and others known and unknown to the Grand Jury,

1  participated in negotiations and preliminary steps in early 2019 to use a licensed prescription drug

2  wholesaler in the State of Washington to distribute large quantities of diverted prescription drugs.

3  PAPYAN took steps to generate misleading business records regarding the new drug wholesaler and

4  acquired a large supply of diverted prescription drugs to be distributed via that wholesaler.  With

5  knowledge of the scheme, SILVERMAN offered advice regarding avoiding detection by law

6  enforcement and assisted his coconspirators with acquiring certain state licenses to further the scheme.

7       22.     In the course of the conspiracy, the coconspirators caused email messages to be sent from

8  individuals in and around Los Angeles, California, to an unwitting Mainspring employee working in

9  Pennsylvania.  The coconspirators also caused various financial transfers, representing payments made

10  by customers to Mainspring in exchange for prescription drugs, to be made between customers in

11  various states, such as New York, and the Mainspring bank account, which was controlled from in and

12  around Los Angeles, California.

13  COUNT ONE:     (18 U.S.C. § 1349 – Conspiracy to Commit Wire Fraud)

14       23.     Paragraphs 1 through 22 of this Indictment are re-alleged and incorporated as if fully set

15  forth here.

16       24.     Beginning on a date unknown, no later than on or about February 9, 2017, and continuing

17  to a date unknown, but through at least on or about March 25, 2019, in the Northern District of

18  California and elsewhere, the defendants,

19                       EDVIN OVASAPYAN,

20                       HAKOB KOJOYAN,

                      LORIK PAPYAN,

21                and STEPHEN SILVERMAN

22  did knowingly conspire to devise and intend to devise a scheme and artifice to defraud as to a material

23  matter, and to obtain money and property by means of materially false and fraudulent pretenses,

24  representations, and promises, and by concealment of material facts and omissions of material facts with

25  a duty to disclose, and, for the purpose of executing such scheme and artifice to defraud, to transmit and

26  cause the transmission of wire communications in interstate commerce, in violation of Title 18, United

27  States Code, Section 1343.

28       All in violation of Title 18, United States Code, Section 1349.

SUPERSEDING INDICTMENT          5

1    COUNT TWO:         (18 U.S.C. § 1956(h) – Conspiracy to Commit Laundering of Monetary
2                                 Instruments)

3         25.    Paragraphs 1 through 24 of this Indictment are re-alleged and incorporated as if fully set

4    forth here.

5         26.    Beginning at a date unknown to the grand jury, but no later than on or about February 9,

6    2017, and continuing as to all defendants to a date unknown to the grand jury, but to at least on or about

7    March 25, 2019, in the Northern District of California and elsewhere, the defendants,

8                              EDVIN OVASAPYAN,
                              HAKOB KOJOYAN,
9                              LORIK PAPYAN,
                          and STEPHEN SILVERMAN
10

11   and others known and unknown, unlawfully and knowingly conspired together and with one another to

12   violate Title 18, United States Code, Section 1956(a)(1).

13        27.    It was a part and an object of the conspiracy that the defendants, and others known and

14   unknown to the grand jury, with the intent to promote the carrying on of specified unlawful activity and

15   to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified

16   unlawful activity, to wit, conspiracy to commit wire fraud in violation of Title 18, United States Code,

17   Section 1349, unlawfully and knowingly, and knowing that property involved in a financial transaction

18   represents the proceeds of some form of unlawful activity, would and did conduct and attempt to

19   conduct financial transactions which in fact involved the proceeds of specified unlawful activity, in

20   violation of Title 18, United States Code, Section 1956(a)(1).

          All in violation of Title 18, United States Code, Section 1956(h).

21

22   COUNT THREE:       (18 U.S.C. § 371 – Conspiracy to Engage in the Unlawful Wholesale
23                               Distribution of Drugs)

24        28.    Paragraphs 1 through 27 of this Indictment are re-alleged and incorporated as if fully set

25   forth here.

26        29.    Beginning at a date unknown to the grand jury, but no later than on or about February 9,

27   2017, and continuing to a date unknown to the grand jury, but to at least on or about March 25, 2019, in

28   the Northern District of California and elsewhere, the defendants,

EDVIN OVASAPYAN,
HAKOB KOJOYAN,
LORIK PAPYAN,
and STEPHEN SILVERMAN

and others known and unknown, did knowingly and intentionally conspire to:

a)      knowingly engage in the unlicensed wholesale distribution of prescription drugs in interstate commerce, in violation of Title 21, United States Code, Sections 331(t), 353(e)(1)(A), 333(b)(1)(D);

b)      engage in the wholesale distribution of prescription drugs without obtaining and providing truthful and accurate transaction histories, transaction statements, and transaction information, with intent to defraud and mislead, in violation of Title 21, United States Code, Sections 331(t), 360eee-1(c), and 333(a)(2); and

c)      defraud the United States and its agencies by impeding, impairing, and defeating the lawful functions of the Food and Drug Administration to protect the health and safety of the public by ensuring that prescription drugs distributed in the United States were safe and effective from the time of manufacturing to the delivery to the entity that sells or dispenses the product to the ultimate consumer or patient.

<u>Overt Acts</u>

30.      In furtherance of the conspiracy, and to effect the illegal objects thereof, the following overt acts, among others, were committed in the Northern District of California and elsewhere:

a)      On or about March 16, 2018, $42,000 was transferred from an account held in the name of Mainspring Distribution to an account domiciled in San Mateo, California.

b)      On or about April 5, 2018, $15,000 was transferred from an account held in the name of Mainspring Distribution to an account domiciled in San Mateo, California

c)      On or about September 26, 2017, the defendants caused Transaction Documentation to be generated for a customer that falsely and fraudulently misrepresented the source of prescription drug products.

d)      On or about March 25, 2019, a quantity of diverted prescription drugs was delivered to an address in North Hollywood, California, with the intent that they be

SUPERSEDING INDICTMENT                          7

1    shipped to a prescription drug wholesale distributor in the State of Washington.

2    All in violation of Title 18, United States Code, Section 371.

3    <u>FORFEITURE ALLEGATION:</u>      (18 U.S.C. §§ 981, 982, 21 U.S.C. § 853 & 28 U.S.C. § 2461(c) –
                                        Criminal Forfeiture)
4

5    31.    All of the allegations contained in this Indictment are re-alleged and by this reference

6    fully incorporated herein for the purpose of alleging forfeiture pursuant to the provisions of Title 18,

7    United States Code, Sections 981 and 982, Title 21, United States Code, Section § 853, and Title 28,

8    United States Code, Section 2461(c).

9    32.    Upon a conviction for any offense alleged in Count One of this Indictment, the

10   defendants,

11                                EDVIN OVASAPYAN,
                                  HAKOB KOJOYAN,
                                  LORIK PAPYAN,
12                                and STEPHEN SILVERMAN

13   shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), all

14   property, real or personal, constituting or derived from proceeds the defendants obtained directly and

15   indirectly as the result of the violation, including but not limited to a forfeiture money judgment and the

16   assets listed in the attached Attachment A.

17   33.    Upon a conviction for any offense alleged in Count Two of this Indictment, the

18   defendants,

19                                EDVIN OVASAPYAN,
                                  HAKOB KOJOYAN,
                                  LORIK PAPYAN,
20                                and STEPHEN SILVERMAN

21   shall forfeit to the United States, pursuant to 18 U.S.C. §§ 981(a)(1)(A) and (C), 982(a), and 28 U.S.C.

22   § 2461(c), all property, real or personal, involved in or traceable to the violation, or constituting or

23   derived from proceeds traceable directly and indirectly to a violation, including but not limited to a

24   forfeiture money judgment and the assets listed in the attached Attachment A.

25   34.    Upon a conviction for any offense alleged in Count Three of this Indictment, the

26   defendants,

27                                EDVIN OVASAPYAN,
                                  HAKOB KOJOYAN,
                                  LORIK PAPYAN,
28                                and STEPHEN SILVERMAN

1   shall forfeit to the United States, pursuant to 18 U.S.C. §§ 981(a)(1)(C), 982(a)(7), and 28 U.S.C.

2   § 2461(c), all property, real or personal, that constitutes or is derived, directly or indirectly, from the

3   gross proceeds traceable to the commission of the offense, including but not limited to a forfeiture

4   money judgment and the assets listed in the attached Attachment A.

5         35.    If any of the aforementioned property, as a result of any act or omission of the

6   defendants —

7               a.    cannot be located upon the exercise of due diligence;

8               b.    has been transferred or sold to, or deposited with, a third person;

9               c.    has been placed beyond the jurisdiction of the Court;

10               d.    has been substantially diminished in value; or

11               e.    has been commingled with other property that cannot be divided without

12                    difficulty;

13   any and all interest the defendants have in other property shall be vested in the United States and

14   forfeited to the United States pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982 and

15   United States Code, Section 2461(c).

16         All in violation of Title 18, United States Code, Sections 981 and 982; Title 21, United States

17   Code, Section § 853; Title 28, United States Code, Section 2461(c); and Rule 32.2 of the Federal Rules

18   of Criminal Procedure.

19   DATED: _S Sept 2019_                 A TRUE BILL

20

21                                             FOREPERSON

22   DAVID L. ANDERSON

23   United States Attorney

24

25   ANDREW F. DAWSON

      BRIGGS MATHESON

26   Assistant United States Attorneys

27

28

# **Attachment A**

- Real Property and Improvements located at 2481 N. Junipero Avenue, Palm Springs, California  92262 (APN 504-223-021-1)

- Real Property and Improvements located at 4305 Groves Place, Somis, California 93066 (APN 156-0-180-050)

- Real Property and Improvements located at 4314 Marina City Drive, Apt 416, Marina Del Rey, California 90292 (APN 8940-435-235)

- Real Property and Improvements located at 8654 Washington Boulevard, Culver City, California 90232 (APN 4312-024-001)

- Real Property and Improvements located at 383 Kalaimoku, Tower 2, Condo Unit 3106, Honolulu, Hawaii 96815 (APN 260180430207, Tax Map Key, 4-2-6-018-043)

- $1,304.12 in funds seized from Citibank account number ending 4298

- $44,427.96 in funds seized from Bank of America account number ending 9518

- $15,042.63 in funds seized from Bank of America account number ending 8795

- $40,689.99 in funds seized from Bank of America account number ending 3759

# Exhibit B

DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

ANDREW F. DAWSON (CABN 264421)
GREGG W. LOWDER (CABN 107864)
Assistant United States Attorneys

     450 Golden Gate Avenue, Box 36055
     San Francisco, California 94102-3495
     Telephone: (415) 436-7200
     FAX: (415) 436-6748
     Email: Gregg.Lowder@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO.  CR 18-0533 RS |
|     Plaintiff, | **FOURTH BILL OF PARTICULARS FOR THE FORFEITURE OF PROPERTY** |
|     v. | |
| EDVIN OVASAPYAN, HAKOB KOJOYAN, LORIK PAPYAN, and STEPHEN SILVERMAN, | |
|     Defendants. | |

       The United States of America, by and through David L. Anderson, United States Attorney for the

Northern District of California, and Gregg W. Lowder, Assistant United States Attorney, hereby files the

following Fourth Bill of Particulars for notice of forfeiture of property.

///

///

///

Fourth Bill of Particulars for Forfeiture of Property
CR 18-0533 RS

1

1    The Superseding Indictment in the above-captioned case filed on September 5, 2019, provides

2    notice of and seeks the forfeiture of both real and personal property pursuant to 18 U.S.C. §§ 981 and

3    982 and 28 U.S.C. § 2461(c).  The United States hereby gives notice that, in addition to any property

4    already listed in the Superseding Indictment's forfeiture allegation, the Bills of Particulars for forfeiture

5    of property filed January 10, 2019, February 14, 2019, and April 1, 2019, the United States is

6    additionally seeking forfeiture of the following property:

7        • Real Property and Improvements located at 10430 Wilshire Boulevard, Apt #1901,

8          Los Angeles, California 90024 (APN 4326-036-097).

9    DATED:    9/6/2019              Respectfully submitted,

10                                   DAVID L. ANDERSON

11                                   United States Attorney

12

13                                   GREGG W. LOWDER
                                     Assistant United States Attorney

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   Fourth Bill of Particulars for Forfeiture of Property
     CR 18-0533 RS
                                        2

# Exhibit C

THE LAND REFERRED TO HEREIN IS SITUATED IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

A CONDOMINIUM COMPRISED OF:

PARCEL 1:

(A) AN UNDIVIDED 1/114TH INTEREST IN AND TO LOT 1 OF TRACT NO. 37481, IN THE CITY OF LOS
ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 961, PAGES 71 AND 72 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM UNITS 1 TO 108 INCLUSIVE AND PH1 TO PH6 INCLUSIVE, AS DEFINED AND DELINEATED ON THE CONDOMINIUM PLAN RECORDED SEPTEMBER 22,1981 AS INSTRUMENT NO. 81-939418, AS AMENDED ON APRIL 12,1983 AS INSTRUMENT NO. 83-401025, BOTH OF OFFICIAL RECORDS.

EXCEPTING THEREFROM ALL MINERALS, OIL, GAS, PETROLEUM, OTHER HYDROCARBON SUBSTANCES IN, ON, UNDER OR WHICH MAY BE PRODUCED FROM THE PROPERTY WHICH UNDERLIES A PLANE PARALLEL TO AND 500 FEET BELOW THE PRESENT SURFACE OF SAID LAND FOR THE PURPOSES OF PROSPECTING FOR AND THE EXPLORATION, DEVELOPMENT, PRODUCTION, EXTRACTION AND TAKING OF SAID MINERALS, OIL, GAS, PETROLEUM, OTHER HYDROCARBON SUBSTANCES BY MEANS OF MINES, WELLS, DERRICKS AND/OR OTHER EQUIPMENT FROM SURFACE LOCATIONS ON ADJOINING OR NEIGHBORING LAND OR LYING OUTSIDE THE ABOVE-DESCRIBED LAND, IT BEING UNDERSTOOD THAT THE OWNER OF SUCH MINERALS, OIL, GAS, PETROLEUM, OTHER HYDROCARBON SUBSTANCES AS SET FORTH ABOVE, SHALL HAVE NO RIGHT TO ENTER UPON THE SURFACE OF THE SURFACE LOCATIONS ON ADJOINING OR NEIGHBORING LAND OR LYING OUTSIDE OF THE ABOVE DESCRIBED LAND, NOR TO USE ANY OF THE SAID LAND OR ANY PORTION THEREOF ABOVE SAID PLANE PARALLEL TO AND 100 FEET BELOW THE PRESENT SURFACE OF SAID LAND FOR ANY PURPOSE WHATSOEVER, BY DEED RECORDED OCTOBER 7,1985 AS INSTRUMENT NO. 85-1167209, OF OFFICIAL RECORDS.

(B) UNIT 97 AS DEFINED AND DELINEATED ON THE ABOVE REFERRED TO CONDOMINIUM PLAN.

PARCEL 2:

AN EXCLUSIVE EASEMENT, APPURTENANT TO PARCEL 1 ABOVE, FOR ALL USES AND PURPOSES OF A PARKING SPACE OVER AND ACROSS THAT PORTION OF LOT 1 OF SAID TRACT NO. 37481 DEFINED AND DELINEATED AS "EXCLUSIVE USE AREA", P-433 AND P-434 ON THE ABOVE REFERENCED CONDOMINIUM PLAN.

PARCEL 3:

AN EASEMENT TO BE USED IN COMMON WITH OTHERS, FOR ALL USES AND PURPOSES OF A STORAGE AREA OVER AND ACROSS THAT PORTION OF LOT 1 OF SAID TRACT NO. 37481 DEFINED AND DELINEATED AS "EXCLUSIVE USE AREA" S-5 ON THE ABOVE REFERENCED CONDOMINIUM PLAN.

ASSESSOR'S PARCEL NUMBER: 4326-036-097

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**                    **CIVIL CODE § 1189**

| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. |
| --- |

State of California               )

County of __San Francisco__       )

On _____09/06/19_____ before me, __Tyle L. Doerr, Notary Public_____,
          *Date*                                 *Here Insert Name and Title of the Officer*

personally appeared   __Gregg W. Lowder_____
                                         *Name(s) of Signer(s)*
_____,

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

> TYLE L. DOERR
> Commission # 2134483
> Notary Public - California
> San Francisco County
> My Comm. Expires Nov 20, 2019

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
                    *Signature of Notary Public*

         *Place Notary Seal Above*
──────────────────── **OPTIONAL** ────────────────────
*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document** Notice of Pendency of Action (Lis Pendens) as to Real
Title or Type of Document: _Property and Improvements Located at 10430 Wilshire Blvd.,_ Document Date: __09/06/19__
_Apt 1901, Los Angeles, CA 90024_
Number of Pages: _____20 Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: __Gregg W. Lowder_____    Signer's Name: _____
☐ Corporate Officer — Title(s): _____    ☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited  ☐ General         ☐ Partner — ☐ Limited  ☐ General
☒ Individual    ☐ Attorney in Fact         ☐ Individual    ☐ Attorney in Fact
☐ Trustee       ☐ Guardian or Conservator    ☐ Trustee       ☐ Guardian or Conservator
☒ Other: __Assistant United States Attorney__    ☐ Other: _____
Signer Is Representing: __United States Attorneys__    Signer Is Representing: _____
_Office - DOJ_

©2014 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)   Item #5907