UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　　　Plaintiff,<br>　　v.<br>LORIK PAPYAN,<br>　　　　　Defendant. | Case No. 18-cr-00533-RS-3<br><br>**ORDER RE: PAYMENT OF RESTITUTION** |

This order assumes familiarity with the lengthy procedural history of this criminal action and focuses solely on the facts pertinent to the government's request for a restitution award of $31,843,643 for victim Gilead Sciences.

On September 3, 2024, Defendant Lorik Papyan was sentenced for the unlicensed wholesale distribution of prescription drugs, in violation of 21 U.S.C. §§ 331(t), 333(b)(1)(D), and 353(e)(1). As part of his sentence, the government argues that Papyan should pay Gilead restitution corresponding to the value of lost profits caused by his role in the so-called "Mainspring" scheme. Through that scheme, Papyan and his co-conspirators acquired HIV medication pills from HIV-positive patients in the Los Angeles area, repackaged the pills (as well as over-the-counter analgesics, candy, and other drugs) into new bottles, forged pedigrees to identify the medications as authentic and FDA-approved Gilead products, and then sold them to a wholesaler named Scripts Wholesale Inc. Scripts ultimately purchased from Mainspring 16,965 bottles of counterfeit Gilead drugs.

According to the government, if Mainspring had not made these fraudulent sales, Scripts would have had to buy the products from Gilead through authorized distributors. In other words, Gilead sold only one bottle (*i.e.*, to a Los Angeles-area patient) when it should have sold two (*i.e.*, one to the Los Angeles-area patient and one to Scripts). Having helped repackage the drugs, Papyan played a direct role in depriving Gilead of profits that it otherwise would have made. Based on a detailed spreadsheet Gilead provided, the government contends that Papyan's conduct cost the company $31,843,643 in lost profits.[1]

"The purpose of restitution is to put the victim back in the position [it] would have been but for the defendant's criminal conduct." *United States v. Gossi*, 608 F.3d 574, 581 (9th Cir. 2010). Pursuant to the Victim and Witness Protection Act, 18 U.S.C. § 3663(a)(3), district courts have statutory authority to award restitution whenever a defendant agrees in a plea agreement to pay it. *See, e.g.*, *United States v. Mayhew*, 213 F. App'x 586, 587–88 (9th Cir. 2006). Here, Papyan agreed in his plea agreement to "make a good-faith effort to pay any fine, forfeiture, or restitution I am ordered to pay." Dkt. No. 190 at 6, ¶ 9. A restitution award is therefore authorized in this instance.

To be clear, the primary victims in this case are HIV-positive patients—those whom Papyan and his co-conspirators convinced to sell their life-saving drugs rather than take them, as well as those who purchased the Mainspring products through Scripts without knowing that they were buying non-FDA approved counterfeits. Unfortunately, there is no evidence on this record as to the losses those victims have suffered—let alone who, exactly, they were.

Yet Gilead is also a victim of the Mainspring scheme. Although Papyan's offense is not enumerated as a restitution offense in the Victim and Witness Protection Act, see 18 U.S.C. § 3663(a)(1)(A), nor a mandatory restitution offense in the Mandatory Victim Restitution Act, see 18 U.S.C. § 3663(A)(c)(1), it nevertheless involved conduct that harmed Gilead. As the Ninth Circuit has recognized, selling a counterfeit product causes the product's legitimate maker to

---

[1] Gilead calculated this amount by multiplying the 16,965 bottles that Mainspring sold to Scripts by the wholesale acquisition costs at the time of sale, minus the manufacturing costs that it saved by not having to produce those units.

"los[e] profits on sales that would have taken place if not for the infringing conduct." *United States v. Anderson*, 741 F.3d 938, 953 (9th Cir. 2013). In that case, involving criminal copyright infringement of Adobe software, the court found error where a district court calculated restitution "using the full retail price [of the legitimate products]as opposed to lost profits." *Id.* Persuasive authority from the Second Circuit followed the same reasoning in the more analogous instance of a pharmaceutical-diversion fraud much like Mainspring's. *See United States v Milstein*, 481 F.3d 132, 135 (2d Cir. 2007) (affirming $3.5 million in restitution for lost profits).

The government rightly recognizes Gilead typically sells its drugs through authorized distributors that handle the logistics of shipping and stocking for a fee. Those distributors, however, are analogous to the stores through which Adobe would have sold its products in *Anderson*—they may have lost out on retail fees, but Gilead bore the brunt of the impact by losing out on product sales. Scripts (and, by extension, its customers) would have bought Gilead drugs from Gilead—the only entity lawfully entitled to sell them—but for the Mainspring scheme.

In sum, the requested restitution is granted. That said, Gilead has filed a civil action against Scripts and other defendants, averring federal trademark infringement and related claims. *See generally Gilead Sciences, Inc. v. Safe Chain Solutions, LLC*, Case No. 21-cv-4106, Dkt. No. 147 (E.D.N.Y. Oct. 14, 2021). That litigation has apparently produced the information Gilead presents here to justify its requested restitution. See Dkt. No. 331-1, Ex. A (Gilead Victim Impact Statement.) at 8. Moreover, at least one person involved in the Scripts operation has been indicted in the District of New Jersey. *See United States v. Diamantstein*, Case No. 23-cr-511 (D.N.J.). Were these cases or any related ones to produce monetary recompense for the 16,695 bottles at issue in the present matter, appropriate offsets shall be applied at the point of collection from Papyan. *See, e.g.*, *United States v. Laney*, 2020 WL 2733991, at *2 (N.D. Cal. May 26, 2020) (allowing defendant "to benefit in the appropriate amount" as the victim "continues to be compensated for its loss from other sources"). Restitution should not operate as a guarantor of corporate profits, let alone be used in conjunction with related litigation to produce a windfall.

**IT IS SO ORDERED**.

Dated: November 22, 2024

_____
RICHARD SEEBORG
Chief United States District Judge